494 So.2d 1224 (1986)
Cynthia SIAT, Wife of and Keith R. Siat, etc.
v.
Byron FAURIA, et al.
No. 86-CA-10.
Court of Appeal of Louisiana, Fifth Circuit.
September 15, 1986.
Writ Denied December 5, 1986.
Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Gerald J. Talbot, New Orleans, for Centennial Ins. Co., appellant.
McGlinchey, Stafford, Mintz, Cellini & Lang, Michael R. Sistruck, Stephen P. Beiser, New Orleans, for Great American Surplus Lines Ins. Co., Inc., appellant.
Phelps, Dunbar, Marks, Claverie & Sims, William H. Howard, III, G. Bruce Parkerson, New Orleans, for Bd. of Com'rs for Port of New Orleans, appellee.
Before CHEHARDY, C.J., and BOWES, GAUDIN, GRISBAUM and WICKER, JJ.
CHEHARDY, Chief Judge.
This appeal is a dispute between The Board of Commissioners for the Port of New Orleans and its comprehensive general liability insurers over whether the plaintiff's injuries are covered by the policies and whether the insurers have a duty to defend the Board of Commissioners.
The main demand in this lawsuit is a claim by the parents of Nikia Kizzi Ann Siat for the injuries their daughter suffered when Byron Fauria, an off-duty harbor policeman visiting a friend in the apartment above the Siats, fired his revolver and the bullet went through the floor and struck the child in the head. The plaintiffs sued Fauria, The Board of Commissioners for the Port of New Orleans (his employer), and the manufacturer of the gun. The Board filed a third-party demand against its insurers, Centennial Insurance Company (the primary carrier) and Great American Surplus Lines Insurance Company (the excess carrier), seeking defense and indemnification.
The Board filed a motion for partial summary judgment, seeking a ruling that the insurers are obligated to defend the Board and to indemnify it in the event of judgment in the plaintiff's favor on the main demand. In turn, the insurers filed motions for summary judgment, seeking to be dismissed from the suit on the ground there is no coverage for this particular injury under the policies and therefore there can be no liability of the insurers nor any duty to supply a defense to the Board.
The trial court ruled in favor of the Board, ordering the insurers to defend the Board and to pay all costs of defense. The insurers have appealed.
*1225 Centennial's policy (the terms and conditions of which also applied to Great American, the excess carrier) provided,
"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *."
However, Endorsement No. 9 of the policies stated,
"It is agreed that such insurance as is afforded by this policy for bodily injury does not apply with respect to claims arising from activities of watchmen, security personnel and policemen employed by or on behalf of the insured."
The insurers assert that because Byron Fauria was a harbor policeman, the injuries suffered by the Siat child are excluded from coverage.
The Board, on the other hand, contends that the Siats have sought recovery from the Board not only under respondeat superior but also have asserted that the Board failed to adequately test, screen and train Fauria; issued a defective revolver; failed to test, inspect and/or otherwise detect the defectiveness of the revolver; and performed alterations to the revolver that rendered or contributed to its being defective. These contentions, the Board asserts, allege direct negligence by the Board, separate and apart from the activities of the defendant harbor policeman. According to the Board, therefore, the exclusion is not applicable.
Although the trial court did not assign oral or written reasons for judgment, his comments during the argument of the motions give some indication why he ruled in favor of the Board. He stated, "I don't think you can contract away your tortious liabilities. * * * I don't think you can eliminate your responsibility by saying, `I'm not responsible for my own negligence.' * * * Whether they are liable or not, that's another question, but I think they have a responsibility to defend * * *." We conclude the trial court apparently misunderstood the distinction between liability of a tort-feasor and liability of an insurer.
An insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. American Home Assurance Company v. Czarniecki, 230 So.2d 253 (La.1969). To this end, the allegations of the petition are interpreted liberally to determine whether they set forth ground that bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. Id.
The Board argues that the allegations of strict liability for a defect in the gun, negligent repair of the gun and negligent issuance of the gun each constitute an "occurrence" within the meaning of the comprehensive general liability insurance and therefore the insurers owe the Board a defense. The Board asserts that even the allegations of negligent training and testing of Fauria entitle it to a defense.
The insurers rely on Picou v. Ferrara, 412 So.2d 1297 (La.1982), in which the Supreme Court upheld a provision in the defendant's employer's policy excluding liability for injuries arising out of the use of an automobile by any person in the course of his employment, even though one cause of the injury might have been negligent entrustment by the employer and another might have been vicarious liability of the employer for the employee's act. The Picou court emphasized, "The use of the automobile, a risk excluded from the policy, is a common and essential element in each theory of liability." 412 So.2d at 1300.
The Board asserts the Picou case cannot apply to this case, contending that the acts of Fauria as a policeman are not a common *1226 and essential element of each theory of liability. The Board argues the language of Endorsement No. 9 contemplates an employee in the course and scope of his employment, therefore if Fauria was off-duty at the time of the accident he was no different than non-security personnel employed by the Board. According to the Board, "Centennial's policy excludes coverage for acts of policemen and plaintiffs allege a defect in the gun, negligent repair and issuance of the gun, all of which do not include as a common and essential element the activities of Fauria."
We find no merit to the argument. The operative fact of the injuries to the Siat child is that they arose from activities of Fauria, a policeman employed by or on behalf of the Board. That defects in the gun may have caused it to discharge, or that Fauria may have been improperly trained in handling the gun, are of no moment in this respect: Had Fauria not been where he was when he was, the resulting shot could not have injured Nikia Siat. Without Fauria's activities, there would be no lawsuit.
The language of Endorsement No. 9 clearly excludes "claims arising from activities of * * * policemen employed by or on behalf of the insured." This broad language does not distinguish between on-duty and off-duty policemen or between policemen within the course and scope of their employment and policemen outside the course and scope of their employment. The clear intent of the endorsement is to exclude any activity of a policeman. We find the language unambiguous.
Where there is no coverage, there is no duty to defend. Accordingly, the district court erred in granting partial summary judgment to the Board.
For the foregoing reasons, the judgment of the district court is reversed. Judgment is hereby rendered in favor of appellants, Centennial Insurance Company and Great American Surplus Lines Insurance Co., Inc., dismissing the third-party demand of appellee, The Board of Commissioners for the Port of New Orleans, at appellee's costs.
REVERSED AND RENDERED.
GAUDIN, Judge, dissenting.
I respectfully dissent, being of the opinion that the petition does allege separate and distinct acts of negligence on the part of the Board of Commissioners and that such allegations entitle the Board, under the terms of its insurance policy, to a defense.